# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| Erin F., <br><br> Plaintiff, <br><br> v. <br><br> Nancy A. Berryhill, Acting Commissioner of Social Security, <br><br> Defendant. | Case No. 17-cv-5475 (HB) <br><br> **ORDER** |

HILDY BOWBEER, United States Magistrate Judge[1]

Pursuant to 42 U.S.C. § 405(g), Plaintiff Erin F. seeks judicial review of a final decision by the Acting Commissioner of Social Security denying her application for supplemental security income ("SSI"). The case is before the Court on the parties' cross-motions for summary judgment [Doc. Nos. 14, 17]. For the reasons set forth below, the Court denies Plaintiff's motion for summary judgment and grants the Commissioner's motion for summary judgment.

## I. Procedural Background

Plaintiff filed an application for SSI on November 26, 2014, alleging she was not able to work as of October 27, 2014, because of a schizoaffective disorder and ankylosing spondylitis. (R. 64.)[2] The alleged onset of disability date was later modified to

---

[1] The parties have consented to have a United States Magistrate Judge conduct all proceedings in this case, including the entry of final judgment.
[2] The Social Security Administrative Record ("R.") is available at Doc. No. 12.

December 15, 2010. (R. 37.) Plaintiff's applications were denied initially and on reconsideration, and she requested a hearing before an administrative law judge ("ALJ"). The hearing was convened on October 14, 2016. (R. 32-62.) Plaintiff and vocational expert Edward Utities testified.

Plaintiff testified that she and her spouse lived in a house they rented from her parents. (R. 38.) Plaintiff drove a couple times a week to medical appointments, the grocery store, and the movie theater. (R. 39.) She had attended college and earned bachelor's degrees in criminology and psychology in 2011. (R. 39.) Plaintiff last worked as a teaching assistant for one of her college professors. (R. 40.)

Plaintiff testified she was not able to work because she found going to work every day difficult. (R. 41.) She quit a telemarketing job because she could not tolerate customers yelling at her on the phone or her supervisors' criticism. (R. 41.) She also had trouble concentrating, handling the stress of deadlines, and being around people in general. (R. 42-43.)

Plaintiff further testified that she took Haldol 50% of the time for hallucinations. (R. 43.) The severity of her hallucinations ranged from hearing her own thoughts out loud to hearing someone being raped. (R. 56.) Plaintiff took Haldol when her hallucinations were severe enough to scare or mentally disturb her. (R. 57.) She also took Adderall for Attention Deficit Hyperactivity Disorder ("ADHD"), which helped her focus. (R. 43.) Her medications were not 100% effective, but they were helpful. (R. 44.) Side effects included sleepiness and appetite suppression. (R. 44.) Plaintiff also experienced tics from Tourette's Syndrome. (R. 57.)

2

During a typical day, Plaintiff testified, she fed and cared for her puppy, watched television, read, washed dishes, did the laundry, wrote on her blog and third-party websites, and slept eight to nine hours a night. (R. 44-45.) She occasionally went on walks, went to a movie theater, shopped for groceries, bathed, prepared food, dressed, washed dishes, and played the violin, guitar, piano, and drums. (R. 46-47, 51.) About once a month, Plaintiff drove her wife from Brainerd to Duluth to visit family. (R. 50.)

After Plaintiff testified, the ALJ asked Mr. Utities to consider a hypothetical individual with no past relevant work, able to occasionally lift and/or carry 20 pounds, frequently lift and/or carry 10 pounds, stand or walk for a total of 6 hours in an 8-hour workday, sit for a total of 6 hours in an 8-hour workday, occasionally climb, occasionally balance, occasionally stoop, occasionally kneel, occasionally crouch, and occasionally crawl. (R. 59-60.) In addition, the individual could understand, remember, and carry out simple tasks, and would be limited to simple work-related decisions. (R. 60.) The individual could also interact occasionally with coworkers and supervisors, and briefly and superficially interact with the public. (R. 60.) Mr. Utities testified that such an individual could work as a small products assembler, sub-assembler, or electrical accessories assembler, all of which were light, unskilled, simple, routine benchwork assembly jobs with no contact with the public and only brief and superficial contact with others. (R. 60.)

The ALJ issued an unfavorable decision on November 21, 2016. (R. 12-26.) Pursuant to the five-step sequential evaluation procedure outlined in 20 C.F.R. § 416.920(a)(4), the ALJ first determined that Plaintiff had not engaged in substantial

3

gainful activity since November 26, 2014. (R. 17.) At step two, the ALJ determined that Plaintiff had severe impairments of degenerative disc disease, schizoaffective disorder; and ADHD. (R. 17.) The ALJ found at the third step, however, that no impairment or combination of impairments met or medically equaled the severity of an impairment listed in 20 C.F.R. part 404, subpart P, appendix 1. (R. 17.)

At step four, the ALJ determined that Plaintiff had the residual functional capacity ("RFC")[3]

> to perform less than the full range of light work . . . except: the claimant is limited to lifting and carrying 20 pounds occasionally and 10 pounds frequently. The claimant is limited to sitting (with normal breaks[] for about 6 hours out of an 8-hour workday. The claimant is limited to standing or walking (with normal breaks) for about 6 hours out of an 8-hour-workday. The claimant is limited to occasional balancing, stooping, kneeling, crouching, crawling, and climbing. Mentally, the claimant is limited to understanding, remembering and carrying out simple tasks. The claimant is limited to making simple work-related decisions. The claimant is limited to tolerating the changes in a simple work setting. The claimant is limited to occasional interaction with co-workers and supervisors with occasional brief and superficial contact with the public.

(R. 19.) Plaintiff had no past relevant work experience, so the ALJ proceeded to step five to consider whether there were jobs existing in significant numbers in the national economy that she could perform. (R. 25.) The ALJ determined that Plaintiff could work as a small products assembler, sub assembler, or electrical accessories assembler. (R. 25-26.) Therefore, Plaintiff was not disabled.

---

[3] An RFC assessment measures the most a person can do, despite her limitations. 20 C.F.R. § 416.945(a)(1). The ALJ must base the RFC "on all relevant evidence, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations." *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004).

4

Plaintiff sought review by the Appeals Council, which denied the request. (R. 1.) The ALJ's decision thus became the final decision of the Commissioner. (R. 1.) Plaintiff then commenced this action for judicial review. She contends the ALJ erred in evaluating the opinion of her treating psychiatrist, Steven Grandt, M.D., considering the effect of her pain on her mental impairments, evaluating the medical evidence in general, and weighing the opinions of non-examining state agency consultants.

The Court has reviewed the entire administrative record, giving particular attention to the facts and records cited by the parties. The Court will recount the facts of record only to the extent they are helpful for context or necessary for resolution of the specific issues presented in the parties' motions.

## II. Standard of Review

Judicial review of the Commissioner's denial of benefits is limited to determining whether substantial evidence on the record as a whole supports the decision. 42 U.S.C. § 405(g). "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002) (citing *Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000)). The Court must examine "evidence that detracts from the Commissioner's decision as well as evidence that supports it." *Id.* (citing *Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000)). The Court may not reverse the ALJ's decision simply because substantial evidence would support a different outcome or the Court would have decided the case differently. *Id.* (citing *Woolf v. Shalala*, 3 F.3d 1210, 1213 (8th Cir. 1993)). In other words, if it is possible to reach two inconsistent positions

from the evidence, and one of those positions is that of the Commissioner, the Court must affirm the decision. *Robinson v. Sullivan*, 956 F.2d 836, 838 (8th Cir. 1992).

A claimant has the burden to prove disability. *See Roth v. Shalala*, 45 F.3d 279, 282 (8th Cir. 1995). The claimant must establish that he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The disability, not just the impairment, must have lasted or be expected to last at least twelve months. *Titus v. Sullivan*, 4 F.3d 590, 594 (8th Cir. 1993).

## III. Discussion

### A. Dr. Grandt's March 2015 Opinion

Dr. Grandt has treated Plaintiff for a schizoaffective disorder, ADHD, and Tourette's Syndrome since September 2012. (R. 650.) He completed a check-the-box Medical Source Statement on March 9, 2015, in which he opined that Plaintiff would be extremely limited in nine categories of mental activities, including maintaining attention and concentration for more than two-hour segments, performing activities within a schedule, working in coordination with others without distraction, getting along with coworkers without distracting them or demonstrating behavioral extremes, responding appropriately to changes in the work setting, and tolerating normal levels of stress. (R. 651.) Dr. Grandt thought Plaintiff would be markedly limited in activities such as remembering locations and work-like procedures, carrying out detailed instructions, accepting instructions, and responding appropriately to criticism from supervisors.

(R. 651.) He believed Plaintiff would be absent from work more than three days a month due to her impairments or necessary medical treatment. (R. 652.) Dr. Grandt also opined that Plaintiff would need to take four five-minute breaks every two hours, in addition to morning, lunch, and afternoon breaks. (R. 652.)

When asked to describe the treatment for Plaintiff's mental conditions and her response, including medication side effects, Dr. Grandt's full response was: "Haloperidol is sedating (take PRN)." (R. 650.) When asked to describe any physical or mental condition that contributed to Plaintiff's mental limitations, Dr. Grandt's full response was: "Yes – Ankylosing spondylitis (pain)."

The ALJ gave little weight to Dr. Grandt's March 2015 opinion because it was inconsistent with the doctor's own treatment notes indicating that Plaintiff "was doing relatively well with even her admitted sporadic use of medications," with mental status examination observations that showed no more than moderate symptoms and limitations, and with Plaintiff's "intact activities of daily living" such as writing, going on vacations, caring for her spouse, and extensively watching and following television programs.[4] (R. 24, 25.) The ALJ noted that Dr. Grandt was Plaintiff's treating psychiatrist and an acceptable treating medical source, but found that the identified inconsistencies outweighed those factors. (R. 24.)

A treating source's opinion on the nature and severity of a claimed impairment is

---

[4] In a previous section of the decision, the ALJ also recounted Plaintiff's reported activities of driving, shopping, paying bills, reading, playing video games and music, going to movies, and caring for her pet. (R. 19-20.)

7

entitled to controlling weight if the opinion "is well-supported by medically acceptable clinical and laboratory techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 416.927(c)(2). Correspondingly, an ALJ need not give controlling weight to an opinion that is not well-supported by clinical findings or laboratory techniques or is inconsistent with other substantial evidence. *Davidson v. Astrue*, 578 F.3d 838, 842 (8th Cir. 2009). If the opinion of a treating source is not afforded controlling weight, the ALJ must consider the following factors in deciding what weight is due: (1) the existence of an examining relationship; (2) the nature of the treatment relationship, such as length of treatment and frequency of examination; (3) the degree to which the opinion is supported by medical evidence such as medical signs and laboratory findings; (4) consistency with the record; (5) the source's specialty; and (6) any other relevant factors. 20 C.F.R. § 416.927(c). The ALJ is not required to explicitly discuss each and every factor, as long as he or she considers all the factors and gives good reasons for the weight assigned. *See Combs v. Colvin*, No. 8:12-cv-429, 2014 WL 584741, at *11 (D. Neb. Feb. 12, 2014); *Derda v. Astrue*, No. 4:09-cv-1847 AGF, 2011 WL 1304909, at *10 (E.D. Mo. Mar. 31, 2011).

Here, the ALJ did not give controlling weight to Dr. Grandt's March 2015 opinion because the opinion was not consistent with Dr. Grandt's own progress notes, Dr. Grandt's mental status examination findings, and Plaintiff's daily activities. These findings are well-supported by the record. In March 2015, Plaintiff told Dr. Grant that "things are going okay" and that her focus had improved since she started taking Strattera for her ADHD. (R. 660.) She was able to watch an entire movie without being

8

distracted. (R. 660.) Her hallucinations had decreased to once a week or so. (R. 660.)
Dr. Grant described Plaintiff as pleasant, cooperative, non-delusional, appropriately groomed, and fully oriented, with normal speech and language, an "okay" mood, mildly restricted affect, linear and goal-directed thought processes, intact attention and concentration, intact cognition, intact memory, and adequate insight and judgment. (R. 661.)

In October 2015, Plaintiff told Dr. Grant "for the most part things have been going well." (R. 692.) She had just returned from a vacation to South Dakota, which she said "went well" and her mood was under control. (R. 692.) Though she reported frequent hallucinations, she said "the 'scary hallucinations' have been few and far between." (R. 692.) In the mental status examination section of the progress note, Dr. Grandt described Plaintiff as pleasant, cooperative, non-delusional, appropriately groomed, and fully oriented, with normal speech and language, good mood, bright affect, linear and goal-directed thought processes, intact attention and concentration, intact cognition, intact memory, and adequate insight and judgment. (R. 693.)

In December 2015, Plaintiff told Dr. Grandt she had been able to stay on task more often since starting Adderall. (R. 708.) She had delayed filling her prescription for Adderall, however, because she and her wife had taken a month-long vacation to North Dakota. (R. 708.) Dr. Grandt documented only "occasional" auditory hallucinations, and those were mostly "relatively benign and are more her experiencing her thoughts out loud." (R. 710, 712.) Plaintiff said she took Haldol only when the voices were critical or abusive. (R. 710.) Dr. Grandt described Plaintiff as intelligent, a quick learner, pleasant,

9

cooperative, non-delusional, and fully oriented, with normal speech, an "okay" mood, bright affect, linear and goal directed thought processes, intact attention and concentration, intact cognition, and intact recent and remote memory. (R. 711-12.) Dr. Grandt said Plaintiff had been "doing quite well" since adding Adderall to her medication regime. (R. 712.) He recommended an ARMHS worker because she reported feeling overwhelmed at times. (R. 712.) There are other similar progress notes and mental status examination findings in the record. (*E.g.*, R. 336-40, 664, 677, 788.) Generally, Dr. Grandt's progress notes indicate that Haldol was effective in treating her hallucinations and that Adderall was effective in treating her ADHD symptoms, as long as Plaintiff took the medication.

The Court agrees with the ALJ that Dr. Grandt's progress notes and mental status examination findings are inconsistent with the notations on the check-the-box form that Plaintiff would be extremely limited in paying attention or concentrating for more than two hours, following a schedule, working in coordination with others, getting along with coworkers, responding appropriately to changes in the work setting, and tolerating normal levels of stress; and with the notations that Plaintiff would be markedly limited in remembering locations and work-like procedures, carrying out detailed instructions, accepting instructions, and responding appropriately to criticism from supervisors. Specifically, numerous records indicate that Plaintiff was pleasant and cooperative, that her attention and concentration were intact, that she was intelligent and a quick learner, and that her medications were effective in treating her hallucinations and symptoms of ADHD. Consequently, the ALJ did not err in finding Dr. Grandt's opinion inconsistent

10

with his own progress notes and mental status examinations.

As to Plaintiff's daily activities, these too are inconsistent with the degree of limitation opined by Dr. Grandt. Specifically, as the ALJ noted, Plaintiff cared for her pet, read books, washed dishes and clothes, wrote on her blog and other websites, went on walks, attended movies, shopped, cooked simple meals, played musical instruments, went on extended vacations, helped care for her disabled spouse, and earned two college degrees with a 3.9 grade point average. (R. 19-20, 22-24.) These kinds of activities are not consistent with the severe and marked kinds of limitations indicated in Dr. Grandt's opinion.

Plaintiff attempts to diminish the ALJ's characterization of her daily activities by explaining that she lived with her parents before renting a house from them, that she was not a *fulltime* caregiver to her spouse, that she had *inattentive* ADHD, and that she needed reminders to bathe, eat, take medications, and do chores. (Pl.'s Mem. Supp. Summ. J. at 17.) But the ALJ did not misstate the evidence, and it is not the role of the Court to reweigh the evidence from Plaintiff's perspective when substantial evidence supports the ALJ's decision. *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007) (quoting *Loving v. Dep't of Health & Human Servs.*, 16 F.3d 967, 969 (8th Cir. 1994)).

Plaintiff also argues that her activities of daily living do not demonstrate an ability to perform full-time competitive work. (Pl.'s Mem. Supp. Mot. Summ. J. at 18.) This argument takes the ALJ's discussion out of context. The ALJ did not cite to Plaintiff's daily activities as proof she could sustain competitive employment; rather, the ALJ determined that Plaintiff's daily activities were not consistent with the degree of

11

limitation opined by Dr. Grandt.

Turning to Plaintiff's argument that the ALJ "gave no obvious consideration to the regulation that provides that opinions of treating sources are generally entitled to more weight," the ALJ was not required to explicitly cite the regulation in her decision. As long as an ALJ considers all the relevant factors and gives good reasons for the weight assigned, the ALJ need not even explicitly discuss each and every factor. *See Combs*, 2014 WL 584741, at *11; *Derda*, No. 4:09-cv-1847 AGF, 2011 WL 1304909, at *10 (E.D. Mo. Mar. 31, 2011). It is clear from the context of the ALJ's decision that the ALJ accounted for the existence of an examining relationship, the nature of the treatment relationship, and Dr. Grandt's specialty.

Of final note concerning Dr. Grandt's opinion, it is significant that the opinion was expressed via a simple check-the-box form. The Eighth Circuit Court of Appeals recently took a dim view of such forms in *Thomas v. Berryhill*, 881 F.3d 672, 675 (8th Cir. 2018). Like the form used in *Thomas*, the questionnaire completed by Dr. Grandt "consist[ed] of nothing more than vague, conclusory statements—checked boxes, circled answers, and brief fill-in-the-blank responses." *Id.* The assessment recounted no medical evidence and provided no elaboration, and thus possessed "little evidentiary value." *Id.* (quoting *Toland v. Colvin*, 761 F.3d 931, 937 (8th Cir. 2014)). The ALJ was entitled to give little weight to the opinion on that basis alone. *See id.*

### B. The Effect of Plaintiff's Pain on Her Mental Impairments

Plaintiff argues the ALJ failed to discuss the connection between her physical pain and psychological complaints. (Pl.'s Mem. Supp. Mot. Summ. J. at 16.) To the contrary,

12

the ALJ took note of Plaintiff's complaints of pain, but determined that the claimed extent and limiting effects of the pain were inconsistent with the amount of physical activity documented in the record, such as going on vacations and helping care for her spouse. (R. 23.) The ALJ also found that Plaintiff's pain had improved with medications and injections. (R. 23.) Plaintiff does not challenge the ALJ's evaluation of her complaints of pain. Moreover, the progress notes cited by Plaintiff as evidence that pain contributed to her mental symptoms contain only Plaintiff's subjective, self-reports of pain. (R. 337, 663, 787.) An ALJ may give less weight to an opinion based on subjective complaints rather than objective medical evidence. *Kirby v. Astrue*, 500 F.3d 705, 709 (8th Cir. 2007). Consequently, the ALJ did not err in considering the effect of Plaintiff's pain on her psychological complaints.

### C. The ALJ's Duty to Assess the Medical Evidence

Plaintiff next contends the ALJ relied on "her own lay judgments about the medical evidence." (Pl.'s Mem. Supp. Mot. Summ. J. at 21.) However, an ALJ—not a physician—is tasked with assessing a claimant's RFC based on the medical and other evidence of record. 20 C.F.R. § 416.946(c); *see Boyd v. Colvin*, 831 F.3d 1015, 1020 (8th Cir. 2016). The ALJ has the responsibility to conduct "an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities." Social Security Ruling 96-8p, 1996 WL 374184, at *2 (S.S.A. July 2, 1996). That includes "weigh[ing] conflicting evidence and . . . resolv[ing] disagreements among

13

physicians." *Kirby*, 500 F.3d at 709. Here, the ALJ did not make lay judgments about the medical evidence, but weighed the evidence and resolved inconsistencies in the record in accordance with her assigned duties.

    **D.**    **Non-Examining State Agency Consultants**

Plaintiff argues the ALJ erred by giving great weight to the opinions of non-examining psychological consultants because they did not review psychiatric records documenting her ADHD or Dr. Grandt's determination that she would qualify for an ARMHS worker. (Pl.'s Mem. Supp. Mot. Summ. J. at 20.) Plaintiff acknowledges that the consulting physician at the reconsideration phase reviewed Dr. Grandt's October 2015 opinion.

Plaintiff's assumption that the consulting physician at the reconsideration level of review, Dr. Mark Berkowitz, did not review psychiatric records documenting her ADHD is based on a flawed premise. Plaintiff assumes that Dr. Berkowitz reviewed only three records because he only cited three records in his Disability Determination Explanation. (Pl.'s Mem. Supp. Mot. Summ. J. at 20; R. 83-84.) But the evidentiary section of Dr. Berkowitz's explanation lists more than three records, including records supplied by Plaintiff's legal representative. (R. 79-82.) Furthermore, Dr. Grandt's progress notes generally reflect that Plaintiff's ADHD was managed effectively with medication, except when Plaintiff did not take it.

As to Plaintiff's argument that Dr. Berkowitz did not consider evidence that she required an ARMHS worker, the Court observes that Dr. Grandt recommended an ARMHS worker because Plaintiff reported feeling overwhelmed at times. (R. 712.)

Plaintiff does not explain how subjective feelings of being overwhelmed would or should have altered Dr. Berkowitz's conclusions. Moreover, Dr. Grandt's recommendation for an ARMHS worker was based on the same reported symptoms and clinical findings that existed in records reviewed by Dr. Berkowitz. Finally, as the ALJ pointed out in her decision, there was no evidence that Plaintiff actually applied for and was approved for ARMHS services. (R. 23.)

The Court has already discussed Dr. Grandt's opinion and explained why the ALJ did not err in giving it little weight. When a treating physician's opinion is not entitled to significant weight, an ALJ may rely instead on an opinion from a non-examining medical source as long as the opinion is consistent with other medical evidence in the record. *See Casey v. Astrue*, 503 F.3d 687, 694 (8th Cir. 2007). Non-treating, non-examining consultants "are highly qualified medical sources who are also experts in the evaluation of medical issues in disability claims under the [Social Security] Act." SSR 17-2p, 2017 WL 3928306, at *3 (S.S.A. Mar. 27, 2017). By statute, the ALJ may consider evidence from such sources as medical opinion evidence. 20 C.F.R. §§ 416.927(e), 416.913a(b).

Here, the ALJ gave great weight to the findings by the state agency medical consultants that Plaintiff could understand, remember, and carry out routine and repetitive three-to-four step instructions, relate superficially with coworkers and supervisors, attend to tasks to completion, and manage the stress involved with simple work. (R. 24.) These findings were consistent with the medical evidence of record over time (including Dr. Grandt's progress notes and mental status examinations), Plaintiff's daily activities, and the effectiveness of medications when Plaintiff took them

15

consistently. More recent evidence provided by Plaintiff relating to her ADHD and recommendation for an ARMHS worker would not have affected the ALJ's grant of great weight to the state agency medical consultants. Consequently, the ALJ did not err in his consideration of the opinions of non-examining state agency psychological consultants.

**IV. Recommendation**

Based on all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Plaintiff Erin F.'s Motion for Summary Judgment [Doc. No. 14] is **DENIED**; and
2. Commissioner Nancy A. Berryhill's Motion for Summary Judgment [Doc. No. 17] is **GRANTED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY**.

Dated: February 26, 2019      s/ *Hildy Bowbeer*
                              HILDY BOWBEER
                              United States Magistrate Judge